JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

(b) County of Residence of First Listed Plaintiff: Monmouth
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Harris
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Riechelson, Cohen & Riechelson
3500 Quakerbridge Road, Suite 203
Hamilton, NJ 08619 - 609-394-8585

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [X] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)

Brief description of cause:
noxious odors release

## VII. REQUESTED IN COMPLAINT:

- [X] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** excess of $5,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: March 24, 2026

SIGNATURE OF ATTORNEY OF RECORD: Kevin Riechelson

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**Kevin S. Riechelson**
**COHEN & RIECHELSON**
3500 Quakerbridge Road, Suite 203
Hamilton, New Jersey, 08619
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@crlawoffices.com

*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRENDA JENNINGS, KATHERINE SCOTT, and MATTHEW ROTUNNO individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>WASTE MANAGEMENT OF NEW JERSEY, INC. d/b/a WASTE MANAGEMENT<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. Plaintiffs, Brenda Jennings, Katherine Scott, and Matthew Rotunno, on behalf of themselves and all others similarly situated, bring this putative class action against Waste Management of New Jersey, Inc. (hereinafter, the "**Defendant**"), which leases, operates, and maintains the Monmouth County Reclamation Center landfill located at 6000 Asbury Avenue, Tinton Falls, New Jersey (the "Landfill").

2. Through its operation and maintenance of the Landfill, Defendant has released, and continues to release overwhelming and widespread noxious odors that invade Plaintiffs' residential

properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, and negligence.

## PARTIES

3. At all times relevant hereto, Plaintiff Brenda Jennings is an individual citizen of New Jersey that owns and resides at a home located at 16 Lincoln Court, Tinton Falls, New Jersey.

4. At all times relevant hereto, Plaintiff Katherine Scott is an individual citizen of New Jersey that owns and resides at a home located at 16 Lincoln Court, Tinton Falls, New Jersey.

5. At all times relevant hereto, Plaintiff Matthew Rotunno is an individual citizen of New Jersey that owns and resides at a home located at 171 Cannonball Drive, Tinton Falls, New Jersey.

6. Defendant and its agents have at all times relevant hereto leased, operated, and/or maintained the Monmouth County Reclamation Center landfill located at 6000 Asbury Ave., Tinton Falls, New Jersey.

7. Defendant Waste Management of New Jersey, Inc. is a foreign profit corporation incorporated under the laws of Delaware, registered to do business in New Jersey and identified through public sources as the lessee, operator, and/or entity exercising control over the landfill.

8. Defendant's corporate headquarters and principal place of business is located at 800 Capitol Street, Suite 3000, Houston, Texas.

9. Upon information and belief, Defendant, including its predecessors and agents, has leased the Landfill and exercised control and ownership over the Landfill at all relevant times hereto.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §

1332(a)(1).

11. Separately and in addition to diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Additionally, Defendant is a citizen of a different state from at least one Plaintiff, establishing minimal diversity.

12. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of New Jersey, because it regularly conducts substantial business in New Jersey through its operation and maintenance of the Landfill, and Plaintiffs' claims arise through such contacts with the forum state.

13. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of New Jersey and it benefits by regularly conducting business through its industrial operations in the state.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events, acts, and/or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because much, if not all, of the property that is the subject of this action is situated in this judicial District.

## FACTUAL ALLEGATIONS

15. Defendant owns and operates a Landfill located at 6000 Asbury Ave, Tinton Falls, Monmouth County, New Jersey, on a 900-acre site where it receives household, commercial, and construction wastes.

16. Defendant's facility disposes hundreds of thousands of tons of waste annually.

17. Defendant's facility is surrounded by residential properties.

18. Plaintiffs reside within the proposed Class Area.

19. On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

20. The noxious odors which entered Plaintiffs' properties originated from Defendant's Landfill, as a result of Defendant's intentional and/or negligent acts and/or omissions.

21. These odors caused by the Landfill have been and continue to be dispersed across public and private land within the Class Area.

***Defendant's Landfill Operations***

22. Defendant's Landfill is defined as a Class I landfill, authorized to accept all types of nonhazardous solid waste including household, commercial, construction, demolition, vegetative, animal and food processing, and dry industrial wastes.

23. Materials deposited into Defendant's Landfill decompose and generate (among other things) Landfill gas, an odorous and offensive byproduct of decomposition which generally consists of methane, hydrogen sulfide, carbon dioxide, and various odorous compounds.

24. Landfill gas from landfills that accept construction and demolition debris, like Defendant's, can be especially odiferous given the high content of hydrogen sulfide, which is known to have a characteristic "rotten-egg" smell.

25. Hydrogen sulfide present in landfill gas can be detected as noxious odors at very low concentrations of only 0.5 parts per billion.

26. A properly operated, maintained, and managed landfill will collect, capture and destroy landfill gas from the landfill to prevent it from escaping into the ambient air as fugitive emissions.

27. Landfill gas may be collected and processed through a system of wells and pipes, in addition to blowers, flares, and/or vacuums at the landfill. This landfill gas may be later flared or processed into energy through a variety of treatment systems.

28. Defendant's Landfill operations produce large quantities of leachate, a highly odiferous liquid comprised of liquid waste from materials received at the Landfill. If not properly treated and contained, this leachate can emit noxious odors beyond the Landfill's property boundary.

29. Leachate forms when wastes filter rainwater, whereby the rainwater draws out or leaches the wastes of chemicals and other hazardous constituents.

30. A properly operated, maintained, and managed landfill will collect, capture, and safely dispose of leachate through a leachate collection and removal system.

31. A properly operated, maintained, and managed landfill will utilize a system of sumps and pipes to pump out and remove leachate so that the leachate may be safely disposed.

32. A properly operated, maintained, and managed landfill will implement adequate daily cover practices to reduce leachate formation, prevent water infiltration, control odor emissions, and mitigate landfill gas emissions.

33. Daily cover involves covering the working face of the landfill where waste is actively unloaded with soil or similar alternative materials.

34. A properly operated, maintained, and managed landfill will control the size of its working face so that it may implement adequate daily cover and mitigate landfill gas emissions.

35. Defendant is required to control its odorous emissions by, among other things, following proper landfilling practices, utilizing adequate landfill cover and covering practices, utilizing adequate lining and lining practices, limiting and/or pre-treating biosolid waste,

utilization of odor control technologies, and installing, operating, maintaining systems for the routing, capture, removal, and elimination of leachate and landfill gas.

36. Defendant has failed to implement an adequate leachate collection and removal system in its Landfill that properly lines, covers, routes, captures, and disposes of leachate, thereby resulting in the offsite emission of noxious odors.

37. Defendant's Landfill has failed to implement an adequate landfill gas collection system, thereby resulting in the offsite emission of noxious odors.

38. Defendant has failed to implement adequate daily cover for the open garbage on its Landfill and has failed to adequately mitigate leachate formation, water infiltration, odor emissions, and landfill gas emissions, thereby resulting in the offsite emission of noxious odors.

***Defendant's Noxious Odor Emissions***

39. Defendant has failed to follow proper Landfilling practices to prevent noxious off-site odor emissions and has failed to sufficiently collect, capture, and destroy Landfill gas and/or leachate generated at its Landfill to prevent fugitive emissions and to otherwise prevent odors from the Landfill from invading the homes and properties of Plaintiffs and the Class.

40. The emissions from Defendant's Landfill, including landfill gas, are noxious and highly odiferous.

41. Defendant's Landfill emissions have been the subject of frequent odor complaints from residents in the nearby residential area.

42. Since March 2021, when Defendant began operating the Landfill, the New Jersey Department of Environmental Protection (NJDEP) has received over 900 odor complaints from residents in Tinton Falls concerning Defendant's Landfill.

43. More than 40 households have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's Landfill.

44. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Landfill is the source and cause of the odor emissions, which have caused damages to neighboring properties.

a. Plaintiffs Brenda Jennings and Katherine Scott indicated that they "can't sit outside on our own balcony, can't open the sliding door or windows on nice days. Embarrassed when family or friends stop by. Can't BBQ. The smell is horrific, disgustingly putrid."

b. Plaintiff Matthew Rotunno reported that "the smell is so bad we can't enjoy sitting outside. Also, sometimes we are unable to open our windows due to the smell being so bad. Also had to cut walks with my dog short."

c. Putative Class Members John and Lauren Caralyus reported that because of Defendant's odors, "we are not able to open our windows for fresh air and air out our house, our child cannot play outside and get fresh air, we are unable to host parties outside and/or sit outside on our patio."

d. Putative Class Members Alona and Mykola Patynok stated that "the smell is so bad sometimes that you can't go outside for a walk with a baby (and/or) dog. In summertime you can't BBQ and spend time outside because of the smell as well."

45. Defendant's well documented pattern of failing to control its emissions is further demonstrated by the extensive administrative record of the Landfill's odors, verified by independent government investigations. A sample of the NJDEP's inspections includes but is not limited to the following:

a. On December 14, 2023, during an NJDEP inspection report, investigators "confirmed a garbage like odor" and "[identified] Monmouth County Reclamation Center as the source of the odor."

b. On January 3, 2024, NJDEP received multiple odor complaints from local residents. In the inspection report, investigators observed "a clearly distinguishable and objectionable constant garbage like odor was detected on the front property" and that "MCRC was identified as the source of the odors."

c. On January 31, 2024, NJDEP received an odor complaint from a resident. In NJDEP's inspection report, investigator indicated that "I called the complainant, who stated that the odor was still occurring. They asked what was causing the frequent odor at the Monmouth County Reclamation Center. I informed them that

their facility was excavating an old cell, and that the odor intensifies with frequent rainfall due to its collection in a Retention Pond."

d. On April 5, 2024, Monmouth County Health Department (MCHD) received an odor complaint that was independently verified as emanating from the Monmouth County Reclamation Center.

e. On April 15, 2024, NJDEP received an odor complaint from a resident. In the inspection report, investigators recorded a garbage like odor and determined that "the odors were confirmed to be emanating from the Monmouth County Reclamation Center."

f. On April 26, 2024, NJDEP received an odor complaint from a resident. In the inspection report, investigators "recorded a garbage like odor" on complainant's front porch which was "confirmed to be emanating from the Monmouth County Reclamation Center."

46. Defendant's pattern of noxious odor emissions in the community have spurred Monmouth County residents to form a 1,300+ member Facebook group, Monmouth County Citizens for Environmental Health and Safety (MCCEHS).[1] The group was "created for the sole purpose of addressing the complaints/concerns, and sharing important news regarding the Monmouth County Reclamation Center...otherwise known as 'The Dump.'" The group is restricted to Monmouth County residents.

47. Below is a small sample of recent complaints made in the MCCEHS Facebook group documenting odors from Defendant's Landfill on the following dates:

a. On November 5, 2025, a resident reported in the group, "Here we go again. The temp starts to drop and the smell starts to stink...it's absolutely ridiculous and inexcusable at this point. Someone needs to be held accountable and something legitimate needs to be done."

b. On December 9, 2025, a resident reported in the group "Just called. The air stinks[.]"

c. On December 13, 2025, a resident reported in the group, "4:15 awake the stink is horrible, headache, no excuse for this [emoticon omitted]"

---

[1] https://www.facebook.com/groups/MCCEHS

48. Defendant's Landfill has repeatedly emitted objectionable noxious odors that were detectable outside the bounds of its property.

49. The Landfill has emitted noxious odors that have caused negative impacts to its neighbors, including lost use and enjoyment of private residential property and adverse impacts on residential property values.

50. Defendant has repeatedly been cited by regulators for failing to operate the Landfill in accordance with its duty to control odors, discharging odors into the surrounding community.

51. Defendant's odorous emissions are continuing; Defendant has failed to cease the noxious emissions, despite knowledge, and despite the emissions being abatable with reasonable care and diligence.

52. The noxious odors emitted from the Landfill are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

53. Plaintiffs and the putative class are a limited subset of individuals in Monmouth County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

54. The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreational areas, dining, and ministry.

55. Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, clients, and worshippers, have experienced and been harmed by the fugitive noxious odors emitted from the Landfill into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

56. The invasion of Plaintiffs' property and that of the Class by noxious odors has negatively impacted the value of and interfered with the use and enjoyment of those properties, resulting in property damages.

## CLASS ALLEGATIONS

### *Definition of the Class*

57. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons defined as:

> **All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the following geographical area: Starting at Shafto Road and Route 33, proceed east to Garden State Parkway. Follow Garden State Parkway north to Shafto Road. Proceed southwest down Shafto Road to point of origin.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

58. This case is properly maintainable as a class action pursuant to an in accordance with Federal Rule of Civil Procedure 23 in that:

a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

c. Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

d. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e. The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

f. There are no unusual difficulties foreseen in the management of this class action; and

g. Plaintiff, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**A. Numerosity**

59. Based on available data, there are more than 2,700 residential households within the Class Area and therefore is so numerous that joinder is impracticable.

**B. Commonality**

60. Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a. Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Landfill to prevent off-site odor emissions;

b. Whether Defendant owed any duties to Plaintiff;

c. Which duties Defendant owed to Plaintiff;

d. Which steps Defendant has and has not taken in order to control the emission of noxious odors through the maintenance and operation of its Landfill;

e. Whether and to what extent the Landfill's noxious odors were dispersed over the Class Area;

f. Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Landfill would result in an invasion of Plaintiffs' property interests;

g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and

h. The proper measure of damages incurred by Plaintiffs and the Class.

61. The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

**C. Typicality**

62. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

63. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly repair, maintain and operate the Landfill.

64. Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of noxious odors causing damage to their properties.

**D. Adequacy of Representation**

65. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

66. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

67. Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of noxious odors originating from Defendant's Landfill.

68. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of noxious odors from landfills.

69. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E. Class Treatment Is the Superior Method of Adjudication**

70. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a. Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b. Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

d. The proposed class action is manageable.

71. Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

72. Notice can be provided to members of the Class by U.S. Mail and/or publication.

**CAUSE OF ACTION ONE – PRIVATE NUISANCE**

73. Plaintiffs restate the allegations of this Complaint as if fully restated herein.

74. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

75. The noxious odors which entered the Plaintiffs' and Class's properties originated from the Landfill, which was improperly and unreasonably maintained and/or operated by the Defendant.

76. The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

77. The noxious odors which entered the Plaintiffs' and Class's properties originated

from the Defendant's Landfill, which is in close proximity to the Class Area.

78. By failing to reasonably design, operate, repair, and maintain its Landfill, the Defendant has caused an invasion of the Plaintiffs' and Class's properties by noxious odors on unusually frequent occasions that are too numerous to comprehensively list herein.

79. The fugitive noxious odors invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The noxious odors substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

80. By failing to reasonably repair, maintain, and/or operate its Landfill, the Defendant has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors.

81. Defendant's nuisance is recurring and ongoing.

82. Defendant's nuisance is abatable.

83. By failing to reasonably repair, maintain, and/or operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and

unreasonably interferes with the Plaintiffs' and Class's properties.

84. The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

85. As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

86. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, which is ongoing and constitutes a nuisance.

87. Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

88. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

**CAUSE OF ACTION TWO – PUBLIC NUISANCE**

89. Plaintiffs restate the allegations of this Complaint as if fully restated herein.

90. Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

91. Plaintiffs and the putative class are a limited subset of individuals in Monmouth County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

92. The noxious odors that entered Plaintiffs and the Class's properties originated from

Defendant's Landfill, which is in close proximity to the proposed Class Area.

93. The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreation, and ministry.

94. By failing to reasonably operate, repair, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on frequent occasions that are too numerous to individually list herein.

95. The noxious odors that invade the Plaintiffs' and the Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious odors substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

96. Due to the Defendant's Landfill emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

97. Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's emissions have substantially interfered with rights common to the

general public, including the right to breathe clean air.

98. The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by Defendant to the public at-large and/or other private individuals not within the Class definition.

99. As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

100. The damages suffered by the Plaintiffs and the Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

101. The general public is also impacted by the Landfill's noxious odors when they work, worship, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or adversely impacted property values. The harm to the general public is separate and apart from the harm to private property experienced by Plaintiffs and the Class.

102. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, which is ongoing and constitutes a nuisance.

103. Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

104. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class have uniquely suffered. The Defendant is liable for all damages arising from

such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

**<u>CAUSE OF ACTION THREE – NEGLIGENCE</u>**

105. Plaintiffs restate the allegations of this Complaint as if fully restated herein.

106. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Landfill in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious gases and odors from the Landfill.

107. A properly operated and maintained Landfill will not emit noxious odors into neighboring residential areas.

108. The Defendant breached its duties by negligently and improperly maintaining and operating the Landfill. By failing to properly maintain and operate its Landfill, the Defendant failed to exercise the duty of ordinary care and diligence.

109. Defendant's breach is demonstrated by its extensive administrative violations, and in the following operational failures:

a. Failing to properly control the creation of landfill gas and/or other odiferous compounds from its Landfill;

b. Failing to implement an adequate landfill gas collection system;

c. Failing to adequately monitor the creation of landfill gas;

d. Failing to apply adequate daily cover;

e. Failing to adequately collect and manage leachate;

f. Failing to adequately implement odor neutralizing systems; and,

g. Other failures that have yet to be discovered.

110. The Defendant's negligent and improper maintenance of its Landfill is the direct and proximate cause of the invasion of noxious odors upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

111. By failing to maintain and/or operate the Landfill, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious odors.

112. Such invasions by noxious odors was the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

113. Defendant could reasonably anticipate that the invasion of the Landfill's noxious odors upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

114. Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, exemplary, and/or punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F. An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I. Such further relief, both general and specific, that this Honorable Court deems just and proper.

**JURY DEMAND**

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.

Date: 3/12/2026

Respectfully submitted,

Kevin Riechelson

Kevin S. Riechelson
**COHEN & RIECHELSON**
3500 Quakerbridge Road, Suite 203
Hamilton, New Jersey, 08619
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@crlawoffices.com

*/s/ Steven D. Liddle*

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI 48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
mrobb@lsclassaction.com
**Pro Hac Vice Motions to be submitted*
*Attorneys for Plaintiffs*